Jeremy A. Stahlin, Stahlin & Bergstresser, Inc., Boston, Mass., William J. Dailey, Sloane & Walsh, Boston, Mass., for defendants.

**APRIL K., et al., Plaintiffs,**

v.

**The BOSTON CHILDREN'S SERVICE ASSOCIATION, et al., Defendants.**

**Civ. A. No. 83–0345–C.**

United States District Court, D. Massachusetts.

March 16, 1984.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action for damages and injunctive relief ostensibly brought under the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiffs are Frances K., her two minor sons, Charles K. and James K., her daughter, April K. and April K.'s minor son, Antonio K.[1] The defendants in this suit are The Boston Children's Services Association ("BCSA"), the Board of Trustees of the BCSA, Nancy Jane Carmel, Director of Social Services at the BCSA, and Joyce Rabson, a social worker associated with the BCSA. Plaintiffs allege that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3), (4). The case is before the Court on defendants' motion for summary judgment.

After hearing I find and rule that an examination of the record reveals that the facts of this case are not in dispute. In the spring of 1982, teachers at a day care cen-

---

**1.** The last names of the parties have been blanked out in the pleadings apparently to avoid disclosure of their identity.

ter became concerned about certain sexual behavior exhibited by Jane Doe 1 and Jane Doe 2, minor daughters of Debra K. Debra K. is the daughter of plaintiff Frances K. and sister of plaintiffs April, Charles and James K. The teachers reported the conduct to the girls' paternal grandmother who had custody of them at that time. When the children's conduct did not change, the teachers contacted an investigator who had been appointed by the Boston Juvenile Court ("BJC") during a previous care and protection hearing concerning the two girls. The investigator, Ms. Harrington, referred the matter to the Tufts New England Medical Center Sexual Abuse Treatment Team ("TNEMC"), where the girls were interviewed by a social worker, Margaret Myer. During the interview, the girls indicated that they had engaged in certain sexual behavior with their uncles, James and Charles K., and their cousin, Antonio K. Consequently, on October 7, 1982, Ms. Myer, on behalf of the TNEMC, caused a report to be filed with the Department of Social Services ("DSS") under the provisions of M.G.L. c. 119, § 51A, finding reasonable cause to believe that Jane Doe 1 and Jane Doe 2 had been subjected to sexual abuse and/or neglect.

As a result, the next day the DSS concluded that it would be appropriate to investigate whether there was "neglect" within the meaning of M.G.L. c. 119, § 51A, with respect to Charles, James, and Antonio K. Because Frances K., the mother of James and Charles and the grandmother of Antonio, was an employee of DSS, the investigation was referred to the BCSA.

A social worker employed by defendant BCSA contacted Debra K., the mother of Jane Doe 1 and Jane Doe 2, as well as the paternal grandmother of the girls. Both denied knowledge of the events. The social worker then contacted Frances K., who was upset about the investigation. She also denied any knowledge of the events. The same social worker interviewed Ms. Harrington of the BJC and Ms. Myer of TNEMC, who reported the prior history of the complaints being investigated.

At this same time, Joyce Rabson, a social worker associated with the BCSA, was assigned to conduct an investigation into the allegations. Ms. Rabson contacted April K., mother of Antonio K. Initially, April K. refused to cooperate with the social worker. Frances K., April's mother, also refused to cooperate until such time as a "complete file" setting forth all names, dates and times of the alleged activities was produced. She was informed that she would not receive the information because it was privileged under state law.

Several weeks later, however, April K. consented to a meeting between herself, her mother and the social worker. At that meeting, April K. allowed her son Antonio to be interviewed by Ms. Rabson for approximately ten minutes. The child told the social worker only that he, Jane Doe 1, and Jane Doe 2 played together. April K. then became upset and terminated the interview. Ms. Rabson made several attempts to set up further interviews with April K. and Frances K., but received no positive response.

On or about November 8, 1982, Ms. Myer of the TNEMC filed a "neglect" report concerning Antonio K. with the DSS pursuant to M.G.L. c. 119, § 51A. In January 1983, defendant Carmel, the BCSA's Director of Social Services, filed a similar report concerning Charles and James K.

Plaintiffs allege in their complaint that the defendants, while acting in their capacities as social workers, and never having met or seen the plaintiffs, (1) "wrongfully, willfully and maliciously dominated, intimidated and interfered with the families of April K. and Frances K. through threats and the illegal use of M.G.L. c. 119, §§ 51A–51B;" (2) "interfered with the employment relationship of Frances K. by making false statements to her employer about the sexual activity of her children and the quality of her home life;" and (3) "slandered and libeled plaintiffs by telling the Department of Social Services and others, both orally and in a written report, that Antonio, Charles and James K. are

sexually maladjusted and that the homes of Frances and April K. require intervention within the meaning of M.G.L. c. 119, §§ 51A–51B."[2] On the basis of these allegations, plaintiffs request monetary and injunctive relief.

Preliminarily, the Court notes that it is far from clear what federal claims plaintiffs have stated in their complaint. Further, plaintiffs have made no attempt to clarify or support their claims by filing memoranda of law or affidavits opposing defendants' motion for summary judgment. Instead, plaintiffs have submitted the matter for determination on the basis of their complaint, two brief affidavits previously filed in support of plaintiffs' motion for a preliminary injunction,[3] and oral argument before this Court.

Counsel for plaintiffs argued to the Court that the issue in this case is whether the assertions made by the two minor girls to the social worker, Ms. Myer, were sufficient to justify the filing of the 51A report regarding Charles and James K.[4] Counsel emphasized that Ms. Carmel had filed the 51A report regarding Charles and James K. without ever having met the two boys. Counsel stressed further that no allegations of actual injury to the boys were ever made. Because of these facts, counsel argues, the filing of the 51A report was improper, constituting a violation of the Fourteenth Amendment and § 1983.

M.G.L. c. 119, § 51A reads, in pertinent part, that

> [A]ny ... social worker ... who, in his professional capacity shall have reasonable cause to believe that a child under the age of eighteen years is suffering serious physical or emotional injury resulting ... from neglect ... shall immediately report such condition to the depart-

ment [of social services] by oral communication and by making a written report
> ....

The phrase "reasonable cause to believe," as used in § 51A, has been interpreted to mean "known or *suspected* instances of child abuse and neglect." 1975–78 Op. Atty.Gen., 157 (June 16, 1975) (emphasis added). The language of the statute "suffering from serious ... emotional injury resulting ... from neglect" has been construed as meaning "all but the most negligible or *de minimus* injuries to children." *Id.*

In light of § 51A and its interpretation, and on the basis of the record, the Court rules that the defendants' filing of the 51A report regarding Charles and James K. was proper. Ms. Myer was told by Jane Doe 1 and Jane Doe 2 that they had engaged in certain sexual behavior with James, Charles and Antonio K. On the basis of this information, defendants had "reasonable cause to believe" that the minors James and Charles K. were "neglected" within the meaning of § 51A. Ms. Rabson attempted to investigate the situation, but Frances and April K. declined to cooperate. Admittedly, the 51A report was filed by Ms. Rabson without her having met the two minor boys. Certainly this is not the preferred situation. But Frances K. herself had prevented Ms. Rabson from interviewing her sons and she cannot have it both ways. Were this Court to accept plaintiffs' argument and hold that a proper 51A report could be filed only after personal contact with the minor involved, then any parent could frustrate the execution of the child-protection law merely by being uncooperative. The Court refuses to read such an unreasonable requirement into § 51A.

---

**2.** Note that plaintiffs do not challenge the validity of § 51A itself; rather, they claim that the statute was executed illegally in this particular situation.

**3.** Plaintiffs' request for a preliminary injunction was denied by U.S. Magistrate Cohen on March 30, 1983.

**4.** Apparently plaintiffs do not challenge the legality of the 51A report filed regarding Antonio K. because the social worker who filed that report, Ms. Myer, was not named as a defendant in this action. Plaintiffs, however, do complain that Ms. Rabson's pre-filing investigation into Antonio K.'s situation somehow violated their rights.

Plaintiffs here have failed to offer the Court any evidence tending to show that there is a genuine issue as to any material fact of this case. Moreover, the record contains no facts supporting the conclusory and vague federal claims plaintiffs have alleged in their complaint. Consequently, I rule that there is no genuine issue of material fact and that, as a matter of law, defendants' motion for summary judgment should be allowed.

Order accordingly.