821 P.2d 291

**L.A.R., individually and on behalf of his son, J.A.R., and his daughter, J.R., Plaintiffs–Appellants,**

v.

**Rose Marie LUDWIG, and Dr. Paul Bedell, husband and wife; Dr. George Dee and Jane Doe Dee, husband and wife; Jane Wayland Center, an Arizona nonprofit corporation, Defendants–Appellees.**

**No. 1 CA–CV 90–019.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 21, 1991.

Les Miller & Associates, P.C. by Les Miller, Leslie L. Rakestraw, Phoenix, for plaintiffs-appellants.

Struckmeyer & Wilson by Lawrence N. Bazrod, G. Lynn Shumway, Phoenix, and Martin, Hart & Fullerton by Mark D. Fullerton, Mesa, for defendants-appellees.

## OPINION

GRANT, Judge.

In this appeal we must decide whether a person who is required to report sexual abuse of a child is immune from civil liability in doing so.

Plaintiff–Appellant, L.A.R., individually and on behalf of his son, J.A.R., and his daughter, J.R., appeal from the trial court's grant of partial summary judgment in favor of defendants-appellees. Appellants' complaint alleged negligence, the tort of outrage, loss of consortium and entitlement to punitive damages as the result of appellees' actions. Appellant claims that those actions led to criminal child abuse charges against appellant L.A.R. and alleged loss of relationship between L.A.R. and his children, J.A.R. and J.R. The trial court granted appellees partial summary judgment on all of appellant's claims arising from appellees' reports of alleged sexual abuse to appropriate authorities pursuant to A.R.S. § 13–3620, leaving only the claim of loss of consortium based on negligent treatment of the children and the punitive damages claims to be litigated.

## FACTS AND PROCEDURAL HISTORY

Plaintiff-son, J.A.R., age 5 at the time, received counseling at appellee Jane Wayland Center for behavioral problems. Rose Marie Ludwig was his counselor at the center. J.A.R.'s father, L.A.R., also a plaintiff in this case, and mother met with Ludwig regarding their son. Ludwig noticed some conflict between the parents and recommended that they come to see

her for marital counseling. The parents agreed and made an appointment which was subsequently canceled. The mother told Ludwig that her husband did not want to go for counseling.

Some weeks later the mother telephoned Ludwig and related an incident in which her three-year-old daughter, J.R., had described being molested by her father. The mother went to Ludwig's office at Ludwig's request. Ludwig told the mother that they had to report the incident to Child Protective Services (CPS) and to the police. The mother and Ludwig both provided information to the CPS caseworker. Ludwig told the caseworker that the child's behavior was consistent with sexual abuse. Ludwig then telephoned the police and related the allegations of sexual abuse.

The only information Ludwig relied on in her reports to CPS and the police was the information given to her by the mother. Ludwig believed that she was required to immediately report the alleged abuse to CPS and to the police and that she had no duty to investigate the allegation before reporting it.

After receiving the report, Officer James Ryan spoke with Ludwig and the mother in Ludwig's office. Ludwig did not tell Officer Ryan, nor the CPS caseworker, that the daughter had told her mother that some of her playmates had touched her private parts. At the officer's request the mother then went home to get the daughter. Subsequently, Ludwig conducted a taped interview with the child, and Officer Ryan and Ludwig next interviewed the child. After these interviews, Officer Ryan told the mother that she must obtain an order of protection to keep her husband from entering the home or the state would take the children away. Ludwig confirmed the officer's statement. Ludwig continued to treat the two children.

About two months later the father was indicted for sexual conduct with a minor and molestation of a child, which are class two felonies. On March 6, 1987, all charges against the father were dismissed with prejudice.

The father and his two minor children then filed their complaint against Ludwig, and her husband, Dr. Paul Bedell; Dr. George Dee, Ludwig's supervisor; and the Jane Wayland Center.

## ISSUES AND DISCUSSION

■ Appellants argue that the trial court erred in granting appellees partial summary judgment because the questions of whether Ludwig had reasonable grounds to report sexual abuse and whether she did so without malice are questions for the trier of fact. We disagree with appellants. First, we believe Ludwig was required to report the allegations of sexual abuse of the daughter as related to Ludwig by the mother because she is a counselor, one of the listed professionals in A.R.S. § 13–3620(A) [1], the mandatory reporting statute.

1. A.R.S. § 13–3620(A) reads:
   A. Any physician, hospital intern or resident, surgeon, dentist, osteopath, chiropractor, podiatrist, county medical examiner, nurse, psychologist, school personnel, social worker, peace officer, parent, counselor, clergyman or priest or any other person having responsibility for the care or treatment of children whose observation or examination of any minor discloses reasonable grounds to believe that a minor is or has been the victim of injury, sexual abuse pursuant to § 13–1404, sexual conduct with a minor pursuant to § 13–1405, sexual assault pursuant to § 13–1406, molestation of a child pursuant to § 13–1410, commercial sexual exploitation of a minor pursuant to § 13–3552, sexual exploitation of a minor pursuant to § 13–3553, incest pursuant to § 13–3608 or child prostitution pursuant to § 13–3212, death, abuse pursuant to § 8–201, or physical neglect which appears to have been inflicted upon such minor by other than accidental means or which is not explained by the available medical history as being accidental in nature or who has reasonable grounds to believe there has been a denial or deprivation of necessary medical treatment or surgical care or nourishment with the intent to cause or allow the death of an infant protected under § 36–2281 shall immediately report or cause reports to be made of such information to a peace officer or to the child protective services of the department of economic security. A clergyman or priest who was [sic] received a confidential communication or a confession in his role as a clergyman or a priest in the course of the discipline enjoined by the church to which he belongs may withhold reporting of the communication or confession if the clergyman or priest determines that it is reasonable and necessary within the concepts of the religion. This

Although appellants argue that paragraph A of A.R.S. § 13–3620 does not apply in this situation because Ludwig did not observe or examine the child prior to reporting, we do not read this statute so narrowly. Considering the strong policy reasons for requiring professionals who work with children to report instances of suspected child abuse, we conclude that Ludwig examined the alleged abuse sufficiently to require her to make a report pursuant to A.R.S. § 13–3620(A). Although Ludwig did not observe the minor, she examined the mother in detail about the minor's behavior.

The trial court's finding that appellees were immune from civil liability pursuant to A.R.S. § 13–3620(F)[2] necessarily implies that the court concluded that Ludwig had reasonable grounds to believe that the daughter had been abused. We concur in this finding.

■ We agree with appellees that "reasonable grounds" as used in A.R.S. § 13–3620(A) and (B) means that if there are any facts from which one could reasonably conclude that a child had been abused, the person knowing those facts is required to report those facts to the appropriate authorities. "Reasonable grounds" is a low

standard. While this appeal may present a close case of when reasonable minds may disagree as to whether reasonable grounds to report alleged abuse exists, we believe that the policy of encouraging people to report child abuse mandates the determination that the trial court did not err in finding that Ludwig had reasonable grounds to suspect abuse and therefore to report it.

The statute does not contemplate that a person must fully investigate the suspected abuse before making a report. All the person must do is make the report. It is the responsibility of Child Protective Services and the police to investigate the allegations. That is what happened in this case. Although Ludwig's report prompted the investigation, the investigation was carried out by the police and CPS, and nearly three months passed before the father was charged with a crime. Courts in other states considering similar child abuse reporting statutes have reached the similar conclusion that a pre-report investigation is not required. *See April K. v. Boston Children's Service Assoc.*, 581 F.Supp. 711 (D.C.Mass.1984); *Gross v. Myers*, 229 Mont. 509, 748 P.2d 459 (1987); *Brozovich v. Circle C Group Homes, Inc.*, 120 Pa.

exemption applies only to the communication or confession and not to personal observations the clergyman or priest may otherwise make of the minor. No report is required under this section for conduct prescribed by §§ 13–1404 and 13–1405 if the conduct involves only minors age fourteen, fifteen, sixteen or seventeen and there is nothing to indicate that the conduct is other than consensual. Such reports shall be made forthwith by telephone or in person forthwith and shall be followed by a written report within seventy-two hours. Such reports shall contain:
1. The names and addresses of the minor and his parents or person or persons having custody of such minor, if known.
2. The minor's age and the nature and extent of his injuries or physical neglect, including any evidence of previous injuries or physical neglect.
3. Any other information that such person believes might be helpful in establishing the cause of the injury or physical neglect.
2. A.R.S. § 13–3620(F) reads:
A person furnishing a report, information or records required or authorized under this section, or a person participating in a judicial or administrative proceeding or investigation re-

sulting from a report, information or records required or authorized under this section, shall be immune from any civil or criminal liability by reason of such action unless such person acted with malice or unless such person has been charged with or is suspected of abusing or neglecting the child or children in question. Except as provided in subsection G of this section, the physician-patient privilege, the husband-wife privilege or any privilege except the attorney-client privilege, provided for by professions such as the practice of social work or nursing covered by law or a code of ethics regarding practitioner-client confidences, both as they relate to the competency of the witness and to the exclusion of confidential communications, shall not pertain in any civil or criminal litigation or administrative proceeding in which a child's neglect, dependency, abuse or abandonment is an issue nor in any judicial or administrative proceeding resulting from a report, information or records submitted pursuant to this section nor in any investigation of a child's neglect or abuse conducted by a peace officer or the child protective services of the department of economic security.

Cmwlth. 417, 548 A.2d 698 (1988). Likewise, we do not believe our legislature intended persons with knowledge of alleged child abuse to conduct their own investigation to decide whether enough evidence of abuse exists to warrant a report.

If a person had reasonable grounds to make a report under A.R.S. § 13–3620, he or she "shall be immune from any civil or criminal liability by reason of such action unless such person acted with malice ..." A.R.S. § 13–3620(F). Appellants argue that whether Ludwig reported the alleged abuse due to malice toward the father is a question of fact that precludes summary judgment.

This court recently faced similar issues when we addressed the immunity available to a CPS caseworker performing duties relating to the investigation and filing of child dependency petitions. *Nation v. Colla,* 1 CA–CV 89–501, Ariz. (Filed September 26, App.1991). *Nation* involved a claim pursuant to 42 U.S.C. § 1983, and we construed federal law to entitle the caseworker to absolute immunity for actions relating to the initiation and filing of the dependency petition. Slip op. at 16. We further held that the caseworker's actions *prior to* the filing of the dependency petition were entitled to qualified immunity only. *Id.* at 21.

The dissent in *Nation* would have considered federal issues in the case in light of Arizona statutes. The dissent stated:

> The Arizona legislature has spoken on the exact issue facing this court, that is, absolute versus qualified immunity. A.R.S. § 8–546.04(A) provides:
>
> > Any person making a complaint, or providing information or otherwise participating in the program authorized by this article [child protective services] shall be immune from any civil or criminal liability by reason of such action, *unless such person acted with malice....*
>
> (Emphasis added.) This is a classic definition of qualified immunity.

*Id.* at 29. (Jacobson, J., dissenting in part, concurring in part).

For purposes of the present case, we note that the language of A.R.S. § 8–546.04(A) and the immunity language of A.R.S. § 13–3620(F) are identical. We agree with the characterization of this language as a "classic definition of qualified immunity."

■ The immunity in the reporting statute is a qualified immunity because it can be overcome by a showing of malice on the part of the person who reported the alleged abuse. *See Roscoe v. Schoolitz,* 105 Ariz. 310, 314, 464 P.2d 333, 337 (1970). The presumption is that a person acted in good faith with proper motives. *See id.* Malicious intent must be proved by the plaintiff to defeat the defense of qualified immunity. *Id.* A.R.S. § 1–215(15) provides that "malice" and "maliciously" "import a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established by either proof or a presumption of law."

Appellants presented no evidence that Ludwig's report of the alleged abuse was motivated by any malice toward the father. Even if she knew of marital problems between the parents, this knowledge leads to no conclusion that she would have any motive to injure the father. Likewise, there was no showing that Ludwig bore any ill will toward the father. In light of the complete lack of evidence that Ludwig acted with malice in reporting the alleged abuse, the trial court was correct in finding that appellees were immune from civil liability for Ludwig's report of alleged child abuse.

■ Finally, appellants argue that summary judgment should not have been granted as to the negligence claims based on improper treatment and counseling of the children and on infliction of emotional distress. Appellants are correct that the immunity statute would not apply to these claims. Appellees' motion for summary judgment sought judgment only on the ground of statutory immunity pursuant to A.R.S. § 13–3620. It is unclear from the partial summary judgment whether the negligence claims alleging negligent coun-

seling and the claim alleging intentional infliction of emotional distress (outrage) were disposed of in the judgment. The trial court should not have disposed of these claims, because the only ground for judgment was immunity. Thus, to the extent that these claims were dismissed in the partial summary judgment, we reverse the judgment and remand for litigation of these claims. In all other respects the judgment is affirmed.

CLABORNE, P.J., and SHELLEY, J., concur.